## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

PETER & MARY FLYNN                              **<u>COMPLAINT</u>**

                                                **<u>JURY DEMAND</u>**


            Plaintiffs,


                                                Case No.
v.                                              HON:


CITY OF LINCOLN PARK


            Defendant.
_____

THE LAW OFFICES OF AARON D. COX, PLLC
Aaron D. Cox (P69346)
Co-Counsel for Plaintiff
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664
Aaron@aaroncoxlaw.com

MARK K. WASVARY, P.C.
Mark K. Wasvary (P51575)
Co-Counsel for Plaintiff
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
248-649-5667
_____

## <u>CLASS-ACTION COMPLAINT</u>

PETER AND MARY FLYNN on behalf of all others similarly situated, by

and through the undersigned attorneys from THE LAW OFFICES OF AARON D.

COX, PLLC and MARK K. WASVARY, P.C., states for this Complaint as follows:

## I.  NATURE OF THE ACTION

1.      This action is brought on behalf of a class of all persons who own

residential real property in the City of LINCOLN PARK (the "City").

2.      The State of Michigan under the Home Rule City Act (MCL 117.1 et

seq.) permits municipal corporations like the City to adopt certain laws, codes, or

rules for building maintenance issues.

3.      MCL 117.3 (K) specifically addresses the adoption of certain building

codes:

> Except as otherwise provided under the Stille-DeRossett-Hale
> single state construction code act, 1972 PA 230, MCL 125.1501 to
> 125.1531, a city may adopt a law, code, or rule that has been
> promulgated and adopted by an authorized agency of this state
> pertaining to fire, fire hazards, fire prevention, or fire waste, and a
> fire prevention code, plumbing code, heating code, electrical code,
> building code, refrigeration machinery code, piping code, boiler
> code, boiler operation code, elevator machinery code, an
> international property maintenance code, or a code pertaining to
> flammable liquids and gases or hazardous chemicals, that has been
> promulgated or adopted by this state, by a department, board, or
> other agency of this state, or by an organization or association that
> is organized and conducted for the purpose of developing the code,
> by reference to the law, code, or rule in an adopting ordinance and
> without publishing the law, code, or rule in full. The law, code, or
> rule shall be clearly identified in the ordinance and its purpose
> shall be published with the adopting ordinance. Printed copies of
> the law, code, or rule shall be kept in the office of the city clerk,
> available for inspection by, and distribution to, the public at all
> times. The publication shall contain a notice stating that a complete
> copy of the law, code, or rule is made available to the public at the
> office of the city clerk in compliance with state law requiring that
> records of public bodies be made available to the general public.

2

4.      The City has adopted a number of codes pursuant to the Home Rule

City Act and MCL 117.3 (K).

5.      Section 1480.01 of the City's codes adopts the 2015 version of the

International Property Maintenance Code (IPMC).

6.      The IPMC is the City's guideline for issuing a certificate of

compliance for existing residential real property in the City. The City requires all

residential real property to pass inspections pursuant to the IPMC.

7.      Sec. 104.3 of the IPMC expressly authorizes the City's code official to

enter any premises without a warrant upon reasonable cause to perform an

inspection of the property.

8.      Sec. 1482.06 of the City's code specifically mandates the City's

inspectors to enter real property without a warrant:

> **Right of entry:** Where it is necessary to make an
> inspection to enforce the provisions of this code, or
> whenever the code official has reasonable cause to
> believe that there exists in a structure or upon a premises
> a condition in violation of this code, the code official is
> authorized to enter the structure or premises at reasonable
> times to inspect or perform the duties imposed by this
> code, provided that if such structure or premises is
> occupied the code official shall present credentials to the
> occupant and request entry. If such structure or premises
> is unoccupied, the code official shall first make a
> reasonable effort to locate the owner or other person
> having charge or control of the structure or premises and
> request entry. If entry is refused, the code official shall
> have recourse to the remedies provided by law to secure

3

entry.

Sec 1482.06 and Sec 104.3 of the IPMC will collectively be referred to in this complaint as the "Inspection Ordinances."

9.    Violations of the City's code related to rental housing can be misdemeanor criminal offenses pursuant to Sec. 1482.99 of the City's code.

10.    The Inspection Ordinances also apply to any inspection performed on any real property in the City, including commercial properties (See Sec. 1486.11). Sec 1486.11 actually makes refusal of the warrantless inspection a misdemeanor criminal violation – See Sec. 1486.11 (a)[1] and Sec. 202.99 (a).

11.    The Inspection Ordinances make inspections of rental and commercial property within the City mandatory.

12.    The Inspection Ordinances mandate the City officials perform these inspections and specifically authorize City officials to enter homes without a warrant with the only restriction being that they must perform the inspection "by presenting credentials."

13.    The Inspection Ordinances ultimately result in it being a crime to refuse the City's inspections.

14.    Inspections under these codes and ordinances are performed by individuals trained in these codes and their enforcement (the "Code Official"). The

Code Official knows, or should know, the requirements of the Inspection Ordinances and other applicable laws.

15.     An owner of real property who fails to permit the City to inspect their property is denied a certificate of compliance and cannot lawfully rent or occupy their property in the City.

16.     An owner of rental property who fails to permit the City to inspect their property is also charged with misdemeanor criminal violation for refusing to permit a warrantless search of their property.

17.     An owner of rental property who fails to permit the City to inspect their property is also subject to having liens placed on their property as a result of the refusal.

18.     Defendant has impeded and threatened to further unconstitutionally impede Plaintiff's, and those similarly situated, right to be free from warrantless searches without cause by maintaining, implementing and enforcing their Inspection Ordinances.

## II.     WHAT HAPPENED TO PLAINTIFF HAPPENS TO EVERY OTHER OWNER OF REAL PROPERTY IN THE CITY

19.     Plaintiff incorporates the preceding paragraphs.

20.     The plight of Plaintiff illustrates the dangers of the system set forth by

---

[1]"Where the Building Inspector or his or her designated agent is refused entry or access or is otherwise impeded or prevented by the owner or operator from conducting an inspection of the premises, such person shall be in violation of this chapter."

the City.

21.     Plaintiffs Peter and Mary Flynn ("FLYNN" or "Plaintiff") are the owners of the property commonly known as 1542 Morris, Lincoln Park, MI 48146 (the "Property").

22.     FLYNN has the exclusive right to the use and control of the Property.

23.     On or about February 6, 2018 the City issued FLYNN a violation for non-compliance with the City's rental ordinance.

24.     The sole reason that the City issued the ticket to FLYNN is that they either were refused access to the Property for inspection or that FLYNN did not permit the City to inspect the Property under the City's Inspection Ordinances in order to obtain a certificate of compliance.

25.     FLYNN refused access to the City because it already had a certificate of compliance that was completed for the Property on or about November 14, 2016 (the "Certificate").

26. Pursuant to the City's codes and ordinances §1482.07 (e): "A certificate of compliance shall be issued by the Code Official of the Building Department for each rental dwelling when it is established that such dwelling or facility is in compliance with all of the code requirements applicable to existing structures or residential occupancies. A certificate of compliance shall be valid for three years."

27. The Flynn's Certificate therefore did not expire until November 14, 2019.

6

28. Notwithstanding the above, the City attempted to compel entry into the FLYNN's Property and punished them for their refusal by issuing them a ticket and forcing them to defend themselves in court.

29. FLYNN challenged the ticket and the charge was dismissed on or about March 22, 2018.

30. In the event FLYNN, or any other owner of real property in the City, refuses to permit the City's mandatory inspection they are denied their right to lawfully rent, use, or occupy property in the City of Lincoln Park.

31. It is the policy and custom of the City, pursuant to its Inspection Ordinances, to perform mandatory, warrantless searches of all real property within the City in violation of the Fourth Amendment of the United States Constitution.

32. Under these unconstitutional practices the City charges and collects inspection fees from $240.00 to $300.00 per occurrence.

## III. PARTIES

33. Plaintiff incorporates the preceding paragraphs.

34. Plaintiff PETER AND MARY FLYNN are adult individuals who reside in West Bloomfield, MI.

35. Defendant City of LINCOLN PARK is a municipal corporation located within Wayne County in the State of Michigan.

## IV.   JURISDICTION AND VENUE

7

36.     Plaintiff incorporates the preceding paragraphs.

37.     Jurisdiction by this Court over Plaintiff' constitutional claims is proper pursuant to 28 USC § 1343 and 28 USC § 1331.

38.     To the extent necessary, supplemental jurisdiction over any state law claims is proper pursuant to 28 USC § 1367.

39.     Venue is proper in this District pursuant to 28 USC § 1391 because the District is where the Defendants reside, where a substantial part of the events and omissions giving rise to Plaintiff' claims occurred, and where a substantial part of all properties subject to the action are located.

40.     As additional Class Plaintiff are identified, this District will remain the most convenient venue in which all future cases can be considered and consolidated as necessary.

## V.     CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF DUE PROCESS / UNCONSTITUTIONAL CONDITIONS DOCTRINE
*(Forcing Plaintiff to Forfeit their Constitutional Rights in order to Rent Property)*

41. Plaintiff incorporates the preceding paragraphs.

42. The Fifth and Fourteenth Amendments to the U.S. Constitution make it unconstitutional to deprive a person of their property without due process of law and just compensation.

43. Plaintiff has a protected property interest in renting property and earning income from doing so.

44. Plaintiff also has a right under the Fourth Amendment against unreasonable searches and seizures and the Amendment only permits searches based on probable cause and the issuance of a warrant.

45. As adopted by the City, the Inspection Ordinances authorizes Code Officials mandatory warrantless searches of real property in the City for the purpose of inspection or whenever Code Officials believe the City's Code has been violated. In that regard the Code provides for their right of inspection without setting forth any warrant procedures in violation of the Fourth Amendment and long standing legal precedent (See *Camera v. Municipal Court*).

46. Where an inspection is not performed for any reason, the City does not secure a warrant, but instead coerces property managers, homeowners, and tenants into consenting to entry and a search under the threat of court action, fines, penalties, liens, and refusal to issue certificates of compliance.

47. Under the Inspection Ordinances there is no ability for an owner to object to the building official's entry and inspection into the owner's property and there is no mechanism creating constitutionally required administrative search warrant standards in place for a building official to obtain an appropriate search warrant if an owner of property were to try to object to such entry.

48. What's worse is that the City's Inspection Ordinances in certain circumstances purports to make the lawful refusal of an unconstitutional warrantless search a crime punishable by up to 90 days in jail.

49. As a result, Plaintiff, and every other owner of real property in the City, is deprived of their right against warrantless searches and otherwise must pay inspection fees, fines, and penalties in order to gain compliance or face the unconstitutional alternative of being deprived of their rights.

50. In the event Plaintiff or those others similarly situated, exercises their right to be free from a warrantless search they are deprived of their right to lawfully rent property in the City or they are punished by the issuance of civil and potential criminal charges for such refusal.

51. Defendant may not lawfully deny a benefit to anyone who chooses to exercise a constitutional right.

52. Accordingly, the Inspection Ordinances adopted by the City are unconstitutional and unenforceable on their face and their application to Plaintiff has resulted in numerous violations of their rights.

53. As set forth above the City conducted an unconstitutional registration and inspection scheme and has wrongfully collected potentially millions of dollars in ill-gotten registration and inspection fees.

54. The City's conduct as described herein coerces Plaintiff, and those similarly

10

situated, to give up their constitutional right to be free from unreasonable searches and seizures.

55. The City's conduct as described herein violates the Unconstitutional Conditions Doctrine and subjects the City to penalties for same.

## COUNT TWO
## VIOLATION OF FOURTH AMENDMENT
### *(Warrantless Searches)*

56. Plaintiff incorporates by reference the preceding paragraphs.

57. The Fourth Amendment to the U.S. Constitution prevents the government from conducting unreasonable searches and provides that warrants, based on probable cause, are required before searching a house.

58. The adoption of Inspection Ordinances constitutes the City's express policy and practice of entering real properties without first satisfying the dictates of the Fourth Amendment and thus, on its face, the Inspection Ordinances are patently unconstitutional and should be struck in their entirety.

59. Alternatively, the City has a policy and practice of punishing Plaintiff and those similarly situated who fail to permit an inspection of their real property for any reason by pursuing court action against Plaintiff and those similarly situated instead of seeking a proper administrative search warrant. As applied, this practice violates the 4th Amendment of the U.S. Constitution.

60. The City's policy and practice is that if an inspection is refused for any

reason the owner of the property is charged criminally for failure to permit an inspection.

61. Under the guise of the City's unconstitutional inspection requirements the City has collected hundreds of thousands of dollars in unlawful registration and inspection fees.

62. Plaintiff has had its right to be free from unreasonable searches and seizures violated and has been harmed as a result.

63. Plaintiff and those similarly situated are denied their constitutional right to the use and income generated from their real property if they fail to permit the City's warrantless searches and as such have been damaged.

## COUNT THREE
## UNJUST ENRICHMENT / REMEDY OF ASSUMPSIT

64. Plaintiff incorporates the preceding paragraphs.

65. The City has been extracting fees and/or penalties from Plaintiff and those similarly situated by conducting the illegal rental registration and inspection scheme as set forth above.

66. The City has been unjustly enriched by collecting inspection fees from Plaintiff and those similarly situated under this unconstitutional scheme.

67. Pursuant to the City Code, the City may place a lien on a property for failure of the property owner to pay penalties for alleged code violations.

68. Michigan law provides that an assumpsit action may be maintained against a

municipality and/or its divisions without regard to government immunity when restitution is being sought for an illegal or inappropriate assessment that is authorized to become a lien on property.

69. It would otherwise be unjust to permit the City to retain funds obtained under an illegal inspection scheme.

## COUNT FOUR
## UNJUST ENRICHMENT

70. Plaintiff incorporates the preceding paragraphs.

71. As more fully set forth above the City's ordinances require that a certificate of compliance be valid for a period of three years from the date of issuance.

72. The Flynn's Property was issued a certificate of compliance after a final inspection was performed on November 14, 2016.

73. Pursuant to the City's ordinances the Property's certificate should have expired three years from November 14, 2016, that being November 14, 2019.

74. Notwithstanding the City issued a certificate for the Property that was back-dated to the date of the application for the Property's certificate, that being September 24, 2014 and expiring on September 24, 2017.

75. The City's backdating of the certificate is contrary to the express language of the City's own ordinance.

76. The result of the City's backdating of certificates is that it subsequently demands from Plaintiff, and other homeowners, that they pay registration and

inspection fees months or years earlier than they would otherwise have to under the proper application of the City's ordinances.

77. Under this scheme the City has been unjustly extracting fines and fees from Plaintiff and those similarly situated for certificates that have not yet expired.

78.The City has directly benefited from this scheme by the unlawful raising of fines and fees and it would be unjust to permit the City to retain fees so unlawfully obtained.

## COUNT FIVE
## INJUNCTIVE RELIEF

79.Plaintiff incorporates the preceding paragraphs.

80.The City continues to mandate warrantless searches under their Inspection Ordinances.

81.The City continues to threaten Plaintiff, and those similarly situated, with fines, fees, court action, and deprivation of certificates of compliance where these warrantless inspections are not granted for any reason.

82.Unchecked, the City will continue to issue criminal tickets to Plaintiff and those similarly situated for failing to comply with the City's unlawful ordinances.

83.Given these circumstance the losses to Plaintiff and other owners of real property in the City are imminent and as such Plaintiff request injunctive relief and an order stopping the City from its illegal and unconstitutional practices.

## COUNT SIX

**DECLARATORY RELIEF**

84. Plaintiff incorporates the preceding paragraphs.

85. An actual controversy exists between Plaintiff and the City of LINCOLN PARK regarding their administration of the Inspection Ordinances in violation of clearly established constitutional rights.

86. Plaintiff and others similarly situated are entitled to a declaration of their rights to be free from warrantless searches and seizures and ask that the Court determine that the City must comply with constitutional requirements.

<u>**COUNT SEVEN**</u>
**VIOLATION OF 42 USC 1983**

87. Plaintiff incorporates the preceding paragraphs.

88. Plaintiff and the class of those similarly situated have a constitutional right to challenge the City's unlawful Inspection Ordinances.

89. As set forth above Defendants then proceeded to prosecute and collect fines and fees from Plaintiff, and those similarly situated, in violation of their clearly established rights.

90. The City has deprived homeowners of property and rights related thereto and is liable to the Plaintiff and those similarly situated pursuant to 42 USC 1983.

91. As set forth above Defendants have also deprived Plaintiff and those similarly situated of their right to be free from unconstitutional searches and seizures.

15

92. Pursuant to 42 USC 1988, in any action or proceeding to enforce Section 1983 the Court, in its discretion, may allow the prevailing party a reasonable attorney fee as part of the costs.

## VII.   CLASS ALLEGATIONS

93. Plaintiff incorporates the preceding paragraphs.

94. All Plaintiff and putative class members are also subject to the City's unconstitutional Inspection Ordinances are forced to succumb to the City's will for warrantless searches under the threat of criminal penalties.

95. Class Definition. Plaintiff seeks to certify the following classes

A) All persons and entities that paid any rental registration or inspection fees to the City of LINCOLN PARK at any time from 2012 through the date of final judgment under the City's unconstitutional Inspection Ordinances that requires property owners to forfeit their rights to be free from unreasonable searches and seizures;

B) All persons and entities that have been deprived of a certificate of compliance for refusing or otherwise failing to have their property unconstitutionally inspected by the City of LINCOLN PARK at any time from 2012 through the date of final judgment under the City's unconstitutional Inspection Ordinances that requires property owners to forfeit their rights to be free from unreasonable searches and seizures; AND

C) All persons and entities that have been forced to pay additional inspection fees, registration fees, or other fines and costs to the City of Lincoln Park for not having a certificate of compliance due to the City's unlawful backdating of such certificates in direct violation of their own ordinance.

96. Numerosity.  The proposed classes are so numerous that joinder of all

16

members is impracticable.  While the exact number of class members is not now

known, Plaintiff believe the class number is in excess of 500 members. These

members may be readily identified from Defendant's own records.

97. Commonality. There are questions of law or fact common to the members of

the class that predominate over questions affecting only individual members.

98. Among the questions of law or fact common to the class are the following:

a)      Does the City's Inspection Ordinances facially permit unconstitutional

warrantless searches?

b)      Does the City's Inspection Ordinances, as applied, violate the 4th

Amendment of the U.S. Constitution?

c)      Does the City increase its revenue by unlawfully requiring property

owner to pay renewal fees for certificates earlier than required by their

own ordinance?

99.     Typicality.  The harm suffered by Plaintiff is typical of the harm

suffered by other class members differing only in amount.  Accordingly, the

claims of Plaintiff are the same as those of the other class members.  Resolution

of these common questions will determine the liability of the Defendant to

Plaintiff and the class members in general.  Thus, the claims properly form the

basis for class treatment in this case.

100.    Although the amount of damages between individual class members

17

may vary, the underlying liability issues remain the same as between all members of the class and the Defendant.

101.     <u>Adequacy of Representation.</u>  The represented parties will fairly and adequately assert and protect the interest of the class.  Plaintiff has already demonstrated its willingness to pursue this litigation on their own behalf, and have no known conflicts with the class members.

102.     Plaintiff's co-counsel will also fairly and adequately represent the interest of the class.  Attorney Mark K. Wasvary and Aaron D. Cox are well versed in the facts and substantive law underlying the Plaintiff's claims and have previously been certified to represent a class in multiple lawsuits involving the IPMC and other Constitutional issues.[2]

103.     This class action is maintainable under Federal Rule of Civil Procedure 23(b).

_____

[2] Mark K. Wasvary has been certified as class counsel in the following lawsuits in the United States District Court for the Eastern District of Michigan: *Village Center Associates, et.al. v City of Detroit*, USDC Case No. 07-12963, *Lola Valley Terrace Association v Charter Township of Redford*, USDC Case No. 09-11238, *Lanson Development Company LLC v City of Dearborn*, USDC Case No. 09-13956, *Eghigian v Fifth Third Bank*, USDC Case No. 07-14406, *Garner, et.al. v City of Roseville, et.al*, USDC Case No. 16-10760, *Garner Properties & Management, LLC v Township of Redford*, USDC Case No. 16-14100, *Garner v City of Taylor*, USDC Case No. 16-cv-13374, *NILI 2011, et.al. v City of Warren*, USDC Case No. 15-13392. Mark K. Wasvary has also been certified in the Wayne County Circuit Court in the matter of *Woodside Square Limited Partnership v City of Romulus*, Case No. 09-019233-CZ and the Oakland Circuit Court in the matter of *Kelly, et.al. v Birmingham Public Schools,* Case No. 12-130333-CZ. Aaron D. Cox has been certified as class counsel in the following lawsuits: *Garner Properties & Management, LLC v Township of Redford*, USDC Case No. 15-14100, *Garner, et.al. v City of Roseville*, USDC Case No. 16-10760, *Garner v City of Taylor*, USDC Case No. 16-cv-13374 and *NILI 2011, et.al. v City of Warren*, USDC Case No. 15-13392.

104.    The maintenance of this action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

a)    The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; and/or

b)    The prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

105.    The party opposing the class has acted or refuses to act on grounds that apply generally to the class, so that final equitable, injunctive or corresponding declaratory and monetary relief is appropriate respecting the class as a whole. Specifically, Defendants have and continue to enforce an ordinance that is unconstitutional on its face and as applied due to lack of a procedure to seek a warrant to search a rental property.

19

106.     The questions of law or fact common to class members predominate over any questions affecting only individual members, and as such a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

107.     The action is and will be manageable as a class action and in fact more manageable than the prosecution of separate actions in various forums and venues.

108.     In view of the complexity and importance of the constitutional issues and expense of the litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

109.     It is probable that the amount which may be recovered for individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

110.     Plaintiff is not aware of any members of the proposed class that have filed similar litigation nor is Plaintiff aware of any pending similar litigation in which the City is a Defendant.

111.     The class action is the appropriate method for the fair and efficient adjudication of the controversy.  The legal and factual bases for the Plaintiff' claims are the same as for the claims of all class members.  The only difference between individual claims is the severity of the harm and resulting damages.

Adjudicating this case on a class wide basis will promote substantial judicial economy by eliminating the likelihood of multiple cases (perhaps thousands) turning on the same questions of law and fact.  The class action will also provide the Plaintiff with the only meaningful avenue for relief, due to the economy of spreading their litigation costs, thereby reducing each individual's expenses over the class and enabling counsel to pursue the litigation by aggregating the claims. Further, the class action will save the Defendant the burden of defending multiple suits in multiple forums.

## IX.    RELIEF REQUESTED

WHEREFORE, on behalf of themselves and others similarly situated, Plaintiff requests the following relief:

A.      That this action be determined as proper to be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b), together with an order appointing the named Plaintiff to represent the class and subclass and certifying Plaintiff' counsel to represent the class and subclass;

B.      The injunctive and declaratory relief as applicable and specified in Counts Five and Six;

C.      An award of damages, including all applicable interest, in an amount to be determined at trial;

D.      An award of costs of this suit, including reasonable attorney's fees, as

provided by 42 USC § 1988 or on other grounds;

  E.  An award of an incentive fee to the named Plaintiff for having the

courage to come forward and challenge the City and the manner in which it

administers its unconstitutional ordinances;

  F. Punitive damages for the City's unconstitutional conduct; and/or

  G.  Any other relief as necessary to redress the violation of Plaintiff's

rights secured by the Constitution and laws.

## **<ins>DEMAND FOR JURY TRIAL</ins>**

  Plaintiff demands a trial by jury on all claims and issues so triable.

    Respectfully submitted by:

    THE LAW OFFICES OF AARON D. COX, PLLC
    Co-Counsel for Plaintiff
    23380 Goddard Rd.
    Taylor, MI 48180
    734-287-3664

    /s/ Aaron D. Cox, Esq.
    By: Aaron D. Cox (P69346)
    aaron@aaroncoxlaw.com


    MARK K. WASVARY, P.C.
    Co-Counsel for Plaintiff
    2401 W. Big Beaver Rd., Suite 100
    Troy, MI 48084
    (248) 649-5667

    /s/ Mark K. Wasvary
    By: Mark K. Wasvary (P51575)
    mark@wasvarylaw.com