## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **MARY FLYNN, PETER FLYNN**, | 2:18-cv-12187 |
| Plaintiffs, | |
| v. | HON. TERRENCE G. BERG |
| **CITY OF LINCOLN PARK**, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | |

Rental property owners Mary and Peter Flynn have filed a proposed class action against the City of Lincoln Park claiming that the City's ordinances requiring inspections of rental property violate their constitutional rights against warrantless searches under the Fourth Amendment, their due process rights under the Fifth and Fourteenth Amendments and give rise to several other civil claims. The case is now before the Court on a motion for summary judgment filed by the City. ECF No. 24. Oral argument was presented by the parties on December 18, 2019. Having carefully reviewed the arguments of the parties and all the relevant authorities, the Court concludes that summary judgment should be entered in favor of the City of Lincoln Park on each of Plaintiffs' claims.

## BACKGROUND

Under Michigan law, "a city may adopt a law, code, or rule that has been promulgated and adopted by an authorized agency of this state

pertaining to fire, fire hazards, fire prevention, or fire waste, and a fire prevention code, plumbing code, heating code . . . [or] an international maintenance code . . . ." Mich. Comp. Laws § 117.3(k). Accordingly, the City of Lincoln Park adopted a code of ordinances for rental dwellings with the stated purpose of "protect[ing] the public health, safety and welfare by establishing minimum standards governing the state of repair and maintenance of rental dwellings." ECF No. 24-4, PageID.506 (Lincoln Park Code of Ordinances § 1482.02(a)). The ordinances also enable the City "to provide an efficient system for compelling both absentee and local landlords to correct violations and maintain, in proper condition, rental property within the city." ECF No. 24-4, PageID.506 (Lincoln Park Code of Ordinances § 1482.02(a)).

The ordinances require that rental properties pass inspection by a City Building official at least once every three years to ensure they are in compliance. ECF No. 24-4, PageID.506–08 (Lincoln Park Code of Ordinances §§ 1482.03, 1482.04, 1482.06). Passing inspection is also a prerequisite to obtaining the certificate of compliance all rental properties must have to operate within the City. The relevant ordinance provides that "[a] certificate of compliance shall be issued . . . when it is established that such dwelling or facility is in compliance with all of the code requirements applicable to existing structures or residential occupancies." ECF No. 28-1, PageID.63 (Lincoln Park Code of Ordinances § 1482.07). According to Mary Flynn's deposition testimony, the building

inspections generally take between five and ten minutes to complete. *See* ECF No. 24-3, PageID.485, 488 (Mary Flynn Dep. Tr.).

The City's rental ordinances also include enforcement provisions, one of which provides that if the owner of any rental dwelling fails to promptly comply with inspection requirements "after being properly notified" of them, the Building Department "shall . . . post[ ] a notice requiring that the occupant of the unit provide entry for inspection purposes at a specified date and time." ECF No. 24-4, PageID.509 (Lincoln Park Code of Ordinances, § 1482.09). Failure to comply with the City's ordinances may result in a "municipal civil infraction." ECF No. 24-4, PageID.510 (Lincoln Park Code of Ordinances, § 1482.99). And any individual who commits three or more violations of the ordinances within a 24-month period may be charged with a misdemeanor punishable by a fine of up to $500 and 90 days in jail. *Id.*

The Flynns' Fourth Amendment challenge focuses on one provision of the City's inspection ordinances, which reads as follows:

> "[w]here it is necessary to make an inspection to enforce the provisions of this code, or whenever the code official has reasonable cause to believe that there exists in a structure or upon a premises a condition in violation of this code, the code official is authorized to enter the structure or premises at reasonable times to inspect or perform the duties imposed by this code, provided that if such structure or premises is occupied the code official shall present credentials to the occupant and request entry. If such structure or premises is unoccupied, the code official shall first make a reasonable effort to locate the owner, owner's authorized agent or other

person having charge or control of the structure or premises and request entry. *If entry is refused, the code official shall have recourse to the remedies provided by law to secure entry.*

ECF No. 24-4, PageID.508 (Lincoln Park Code of Ordinances, § 1482.06(d)) (emphasis added) (adopted from Int'l Prop. Maint. Code, § 104.3, Int'l Code Council (2015), https://www2.bgky.org/assets/files/aqoB3Kn5.pdf). Plaintiffs argue that the last sentence of this ordinance authorizes mandatory, warrantless inspections.

As counsel for the Flynns acknowledged during oral argument, however, the City's inspection ordinances also provide rental-property owners with an opportunity to challenge violation notices they receive. To properly challenge such a notice, the property owner must file a written petition within 20 days of the date he or she receives the notice. ECF No. 24-4, PageID.510 (Lincoln Park Code of Ordinances, § 1482.10). That written petition must state "the grounds of the appeal" and request a hearing. *Id.* Owners who file petitions that comply with these parameters "*shall* be granted a hearing on the matter before the Hearing Board on Dangerous Buildings and Code Appeals." *Id.* (emphasis added). The Board is composed of individuals who are not employed by the City and who possess specialized training in building trades. ECF No. 24-18, PageID.599 (John Meyers Dep. Tr.).

The Flynns own eight residential rental properties in Lincoln Park. Their lawsuit focuses on a single violation the City Building Department

issued them in connection with the property located at 1542 Morris.[1] *See* ECF No. 24-3, PageID.482 (Mary Flynn Dep. Tr.). That property was initially registered as a rental property in 2008 and has been continuously occupied by tenants for the past several years. ECF No. 24, PageID.417; ECF No. 24-3, PageID.491. It was re-inspected in 2011 and, finding everything in order, the City issued a new certificate of compliance. *Id.* But when the property was again inspected in 2014 as part of the process of issuing a new certificate of compliance, the City Building Inspector identified several problems. *See* ECF No. 24-6 at PageID.519–22 (Letters from City Building Dep't to Plaintiffs). It took Plaintiffs approximately two years from the date of the initial August 2014 inspection to address these issues. *See id.* The City re-inspected the Morris property on November 14, 2016 and, finding the previous issues resolved, finally issued the property a new certificate of compliance. *See id.* at PageID.522; ECF No. 24-9, PageID.530 (Letter from Plaintiffs to City Building Dep't). That certificate listed an expiration date of September 24, 2017, approximately three years from the date the Flynns paid the inspection fee but less than one year from the date the City completed its final inspection and deemed the building's compliance

---

[1] The Flynns' briefing also references another property they own, located at 2151 College Street. But during oral argument the Flynns implicitly conceded that they were never issued any civil violation in connection with that property. To the extent the Flynns are asserting constitutional claims related to the College Street property, those claims encounter the same standing roadblocks as their claims relating to the Morris property.

issues resolved. *See* ECF No. 24-6, PageID.523 (Certificate of Compliance). The Flynns assert the certificate should have been valid for three years from the date the City determined the property was in compliance with the ordinance's requirements, not from the date they paid the inspection fee. *See* ECF No. 1, PageID.6.

When the City notified the Flynns in September and October 2017 that their most recent certificate of compliance was expiring and the Morris property was accordingly due for another inspection, Plaintiffs responded with a letter disputing that the property was due for inspection. ECF No. 24-9, PageID.530. The City responded that the Flynns had been informed as early as August 11, 2014 that a new rental inspection would be required for the Morris property in 2017. ECF No. 24-10. In a letter to the Flynns, the City explained that their "[f]ailure to comply with rental certification in a timely manner [in connection with the previous certificate] does not remove the responsibility to renew within the three year renewal date, commencing from date of payment." *Id.* The City again urged the Flynns to contact the Building Department to schedule an inspection. *Id.* More than three months later, the City sent the Flynns a letter stating that the Morris property, because it lacked a valid certificate of compliance, was operating in violation of City ordinances and the Flynns were accordingly being issued a civil infraction ticket, along with a notice to appear in court. ECF No. 24-12, PageID.538 (Notice of Civil Infraction Ticket); ECF No. 24-13 (Civil

Infraction Ticket). The City issued that ticket to Mary Flynn on February 7, 2018. ECF No. 24-13.

The Flynns acknowledged in deposition testimony that they never appealed the City's request for an inspection either before or after the ticket was issued. *See* ECF No. 24-2, PageID.460 (Peter Flynn Dep. Tr.); ECF No. 24-3, PageID.485. But they also claimed to be unaware that any formal appeal process was available to them. ECF No. 24-2, PageID.460; ECF No. 24-3, PageID.485. Mary Flynn appeared in court in Lincoln Park in connection with the ticket and it was subsequently dismissed. ECF No. 1, PageID.7 (25th Jud. Dist., State of Michigan Register of Action) (indicating ticket was dismissed on March 22, 2018). After the ticket was dismissed, neither of the Flynns paid any fines or were criminally penalized in connection with the dismissed ticket. ECF No. 24-3, PageID.491.

It is undisputed that no rental property of the Flynns' was ever searched by any City Building Inspector or other official without their consent or a valid warrant. *See* ECF No. 24-3, PageID.484 (Q: "Has there been a time when you told the city that, no, you cannot enter this property and then they still proceeded to enter the property?" A: "No."). Further, there is no evidence that the City has ever conducted any inspection of a rental property without the property owner's consent or a warrant pursuant to the challenged ordinance. John Meyers, the City's building official, testified that the City has previously sought administrative

warrants when needed to justify entry into rental homes when the owner or tenant refused entry. *See* ECF No. 24-18, PageID.589 (John Meyers Dep. Tr.). Moreover, the Flynns were never criminally charged in connection with their failure to comply with the City's inspection ordinances, and the civil infraction notice they were initially issued for refusing inspection was dismissed. Despite this, the Flynns allege that Lincoln Park's "policy and custom" of "perform[ing] mandatory, warrantless searches of all real property within the City" pursuant to its ordinances violates the Fourth Amendment. ECF No. 1, PageID.7. Plaintiffs also make related allegations about claimed violations of the due process clause of the Fifth and Fourteenth Amendments, as well as Michigan law. These claims lack merit and the Court will accordingly enter summary judgment in favor of the City.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that

there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587 (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001). The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

## I.  Fourth Amendment

The core allegation of the Flynns' Complaint is that Lincoln Park's inspection ordinances represent a "policy and practice of entering real properties without first satisfying the dictates of the Fourth Amendment." ECF No. 1, PageID.11. This, according to the Flynns, is a

facial violation of the Fourth Amendment.[2] *Id.* They also raise an as-applied Fourth Amendment challenge to what they describe as the City's practice of punishing Plaintiffs and other property owners for refusing to submit to inspection by building officials. In response, the City urges that Plaintiffs lack standing to pursue their Fourth Amendment claims, first, because they cannot establish the injury required for Article III standing and, second, because they had no reasonable expectation of privacy in the Morris property that could support a Fourth Amendment challenge. The Court agrees that Plaintiffs lack standing to assert their Fourth Amendment claims and will accordingly enter summary judgment in favor of the City on that claim.

### A. Plaintiffs lack Article III standing.

Plaintiffs lack Article III standing to assert their Fourth Amendment claim because they have not suffered a cognizable injury. The United States Constitution provides that federal courts may exercise jurisdiction only over an actual "case or controversy." U.S. Const. art. III, § 2. Standing is a prerequisite for all actions, including class actions.

---

[2] The Flynns frame their 42 U.S.C. § 1983 claims as a separate count from their claims for violation of the Fourth and Fourteenth Amendments. But § 1983 just creates a civil cause of action for individuals "who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, 378 F.3d 566, 576 (6th Cir. 2004). "Section 1983 is not itself a source of substantive rights, but only a method for vindicating federal rights elsewhere conferred." *Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006). Because Count Seven of the Complaint does not assert any independent right that is not raised by another count, summary judgment in favor of the City is warranted on that claim.

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). The Supreme Court has identified three elements necessary to establish standing. First, a plaintiff must have sustained: "(1) a concrete and particularized injury, actual or imminent, (2) traceable to the defendant, and (3) proof that a favorable outcome would redress the harm." *Vonderhaar v. Vill. of Evendale*, Ohio, 906 F.3d 397, 401 (6th Cir. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). An allegation "of *possible* future injury" is insufficient to meet Article III's standing requirements. *Clapper v. Amnesty Int'l USA*, 468 U.S. 398, 409 (2013). The injury instead must be "certainly impending." *Id.* at 410.

This Court reads the Sixth Circuit's 2018 opinion in *Vonderhaar v. Village of Evendale, Ohio* as foreclosing the Flynns' claims that they have suffered a cognizable Fourth Amendment injury given that the City never searched any property of theirs without a warrant or their consent. 906 F.3d 397. *See DaimerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (explaining that when plaintiffs assert multiple claims in federal court at least one of the plaintiffs must have standing for each claim). *Vonderhaar*, which involved facts and legal claims highly analogous to those now before the Court, addressed a Fourth Amendment challenge to the Village of Evendale, Ohio's building code governing maintenance of private property. Like the ordinance in this case, Evendale's building code required that the village's building commissioner inspect each property to ensure compliance with the code before issuing a required

11

permit—akin to the procedure for securing certificates of compliance in Lincoln Park. *Id.* at 400. If an Evendale property owner or occupant refused entry to the building commissioner, the commissioner was permitted to use "the remedies provided by law to secure entry." *Id.* The inspection ordinance at issue in the instant case includes identical language. And as in this case, in *Vonderhaar* it was undisputed that "the Village had never relied on the code to conduct a warrantless search and believes it permits no such thing." *Id.* at 399. The Sixth Circuit, speaking plainly, found this left the plaintiffs "without the risk of an impending injury and, it follows, without standing to raise this [as-applied Fourth Amendment] claim." *Id.* Further, because the plaintiffs' property had not actually been inspected without their consent or a warrant, the Sixth Circuit found that neither *Vonderhaar* plaintiff had suffered any actual injury that could support an as-applied Fourth Amendment challenge. "[T]he same lack of risk of harm—past, present, or future—also bar[red] them from bringing a facial Fourth Amendment challenge." *Id.* at 401 (citing *Platinum Sports Ltd. v. Snyder*, 715 F.3d 615, 618 (6th Cir. 2013)). Applying *Vonderhaar* to the facts of this case, the Court finds that the Flynns have failed to establish the injury requisite to any Fourth Amendment claim. On that basis, the Court will enter summary judgment in favor of Lincoln Park on Count Two, Plaintiffs' facial and as-applied Fourth Amendment challenges to the City's rental-inspection ordinances.

At least one other court in this district has determined that the Sixth Circuit's opinion in *Vonderhaar* forecloses Fourth Amendment standing where individuals challenging a property-inspection ordinance acknowledge that their property was never actually searched without a warrant or their consent pursuant to the challenged ordinance. In *Investment Realty Services, LLC v. City of Garden City*, No. 19-10198, 2019 WL 4017142, *7 (E.D. Mich. Aug. 26, 2019), the Honorable Sean F. Cox dismissed the plaintiff's Fourth Amendment claims involving facial and as-applied challenges to another identical property-inspection statute in Garden City, Michigan. Judge Cox explained that, after *Vonderhaar*, the dispositive question on standing "is whether the defendant has conducted an inspection of a property under its rental ordinance in violation of the Fourth Amendment, which means without either consent or a warrant, or whether there is a certainly impending risk that the defendant will do so." *Id.* at *6. Finding that there had been no illegal search and no impending risk of any such search, Judge Cox dismissed the plaintiff's Fourth Amendment claims on standing grounds. *See id.* The same course of action is warranted in the Flynns' case, which involves analogous facts and an inspection ordinance with the same language stating that "[i]f entry [to the property] is refused, the code official shall have recourse to the remedies provided by law to secure entry."

Similarly, in *MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 408 (E.D. Mich. 2019), which was decided after, but does not cite, *Vonderhaar*, the Honorable David M. Lawson granted the City of Detroit's motion for summary judgment on the plaintiffs' Fourth Amendment claim after determining that they had not "created a fact question on causation of damages because there is no record evidence that the City conducted any inspections over the objection of plaintiff landlords, or that the plaintiffs ever refused an inspection." *Id.* at 408. Judge Lawson framed as a causation issue the fact that "[n]o city official ha[d] testified on this record that he or she ever inspected rental properties when the owner or occupant refused entry." *Id.* at 418. The *Vonderhaar* court framed the absence of evidence that any government official ever carried out a search without a warrant or consent pursuant to the inspection ordinance as a standing issue. 906 F.3d at 401–02. But Judge Lawson in *MS Rentals, LLC*, the Sixth Circuit in *Vonderhaar*, and this Court ultimately reach the same conclusion that summary judgment on a Fourth Amendment challenge is appropriate where there is no evidence that the plaintiff's property was ever searched without a warrant or consent.

The Court acknowledges that yet another court in this district, in a case challenging similar property-inspection ordinances, found that the plaintiffs had in fact established an injury sufficient for Article III standing. In that 2019 case, *Halpern 2012, LLC v. City of Center Line*,

404 F. Supp. 3d 1109 (E.D. Mich. 2019), the Honorable Nancy G. Edmunds distinguished *Vonderhaar* from the rental-ordinance case before her on the basis that the City of Center Line's challenged ordinance, unlike Evendale, Garden City, and Lincoln Park's, did not include language permitted a building commissioner "only to 'secure entry' to a structure with 'the remedies provided by law.'" *Id.* at 1117 (quoting *Vonderhaar*, 906 F.3d at 401). Judge Edmunds determined that "it is the absence of such language, language that can be read as providing an express warrant procedure or the opportunity for pre-compliance review, which affords Plaintiff standing." *Id.* at 1118. This case does not require the Court to answer whether the Sixth Circuit's decision in *Vonderhaar* turns on the ordinance's inclusion of language specifying that the Evendale commissioner could use "the remedies provided by law to secure entry" to rental properties, *Vonderhaar*, 906 F.3d at 400, because the Lincoln Park ordinance in fact includes the language Judge Edmunds found missing from the inspection ordinance before her. *See* ECF No. 24-4, PageID.508 ("If entry is refused, the [Lincoln Park] code official shall have recourse to the remedies provided by law to secure entry."). As the Sixth Circuit put it in *Vonderhaar*, "[b]ecause the Fourth Amendment prohibits a warrantless search, it is not a 'remed[y] provided by law.'" 906 F.3d at 401. Thus the Court's decision that the Flynns lack standing to bring a facial or as-applied

15

Fourth Amendment challenge based on the ordinance at issue here is not inconsistent with Judge Edmunds's opinion in *Halpern 2012*.

Another recent Fourth Amendment challenge to a property-inspection ordinance in Southfield, Michigan was decided in *Oron 2015 LLC v. City of Southfield*, No. 18-12671, 2019 WL 2502739 (E.D. Mich. June 17, 2019) by the Honorable Mark A. Goldsmith. In that case, the court was deciding a motion for judgment on the pleadings, applying the standard for motions to dismiss for failure to state a claim and for lack of subject-matter jurisdiction. *Id.* at *2. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (explaining that in evaluating a motion to dismiss under Rule 12(b)(6) courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief.") (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)); Fed. R. Civ. P. 12(b)(1), 12(b)(6). Judge Goldsmith found that the plaintiff in his case had "allege[d] that it was subjected to a warrantless inspection." *Oron 2015 LLC* at *3. This, according to the court, would generally be "sufficient to confer standing . . . because Oron 2015 allege[d] that its legally protected interest had been invaded." *Oron 2015* is therefore plainly distinguishable from the case now before this Court, in which there is neither evidence nor allegation that Lincoln Park ever searched the

Flynns' property—or any other rental property—without either a warrant or consent.[3]

The Court acknowledges that in *Garner Properties & Management v. Charter Township of Redford*, No. 15-14100, 2017 WL 3412080 at *1 (E.D. Mich. Aug. 8. 2017) (Goldsmith, J.), the court permitted Fourth Amendment challenges to a rental-inspection scheme to move past the summary-judgment phase. But that case was decided before the Sixth Circuit issued its opinion in *Vonderhaar*. The plaintiff in *Garner* was found to have standing because it was issued fines for non-compliance with the Charter Township of Redford's property-inspection scheme (even though the plaintiff could seek reimbursement for those fines from the property owners). *Id.* at *2–3. *Vonderhaar,* however, suggests that a mere fine might be insufficient to establish standing in the context of Fourth Amendment challenges to property-inspection ordinances. As stated by the Sixth Circuit, "the Supreme Court has tightened the hatches" on the requirement of an actual or imminent injury to establish standing. *Id.* at 401.

Also instructive is a decision from the Eastern District of Pennsylvania which upheld a challenged inspection ordinance on the basis that it "does not force or compel an inspection, as the only consequence of failing to consent to a search is the denial of rental

---

[3] The Court also observes that *Oron 2015* does not address the Sixth Circuit's opinion in *Vonderhaar*, 906 F.3d 397.

license" and, further found that, "[f]ines and criminal prosecution are only possible under [the ordinance] if a property owner, after having failed to obtain a rental license, leases his property to a third party or represents to the public that his property is for rent, use, or occupancy." *Marcavage v. Borough of Landsdowne, Pa.*, 826 F. Supp. 2d 732 at 742–43 (E.D. Pa. 2011) (citing *Wyman v. James*, 400 U.S. 309 (1971) (upholding an ordinance requiring government home inspections to investigate safety conditions for children on welfare because the inspections were "not forced or compelled" and "the only consequence of refusing to consent to an inspection was the loss of welfare funding.")). The Court agrees that merely being denied a rental license would be insufficient to establish Fourth Amendment standing. Here, however, it is unclear if the Flynns contend they would be subject to fines and criminal consequences under the City's inspection ordinances even if they immediately stopped leasing their property to tenants as soon as they fell out of compliance with the inspection ordinances. Either way, despite expiration of their certificate of compliance and refusal to submit to timely re-inspection, the Flynns acknowledge that at no point did the City attempt to bar them from continuing to lease their property to tenants. ECF No. 24-3, PageID.491.

To establish Fourth Amendment standing in the property-inspection context after *Vonderhaar*, a plaintiff needs to present allegations or evidence that the government has actually conducted a

warrantless search of plaintiff's property pursuant to the inspection ordinance or has imminent plans to do so.[4] *See* 906 F.3d at 399 ("But the village never relied on the code to conduct a warrantless search and believes it permits no such thing. That leaves the plaintiffs without the risk of an impending injury and, it follows, without standing to raise this [Fourth and Fourteenth Amendment] claim."). Because there is no evidence that any representative of Lincoln Park ever searched any property belonging to the Flynns—or to any other City resident—without their consent or a warrant, the Court finds that they lack the requisite injury for Article III standing. On that basis, the Court will enter summary judgment in favor of the City on Plaintiffs' Fourth Amendment claims, identified as Count Two of the Complaint.

### B. Plaintiffs have not established a reasonable expectation of privacy in the Morris property.

Although Plaintiffs' failure to establish any injury sufficient for Article III standing in the context of their Fourth Amendment claims is dispositive of Count Two of their Complaint, the Court also observes that the Flynns have not shown they had any reasonable expectation of privacy in their rental property sufficient to support a Fourth Amendment challenge. To assert a Fourth Amendment claim a plaintiff

---

[4] *NILI 2001, LLC v. City of Warren*, No. 15-cv-13392, 2017 WL 5467746 (E.D. Mich. Nov. 14, 2017) (Drain, J.), like *Garner Properties. & Management,* 2017 WL 3412080, was decided before—and appears inconsistent with—the Sixth Circuit's decision in *Vonderhaar.*

"must show that the government's action in some way invaded his own reasonable expectation of privacy." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 544 (6th Cir. 2003) (citing *United States v. Knotts*, 460 U.S. 276, 281 (1983)). The Flynns' failure to do so provides another basis for the Court to grant summary judgment in favor of Lincoln Park on their Fourth Amendment claims. *See Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (explaining that the question of whether an individual had a reasonable expectation of privacy in property "is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.").

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Courts apply a two-part test to assess whether a plaintiff had the reasonable expectation of privacy required to assert a Fourth Amendment challenge. That inquiry asks: (1) whether the plaintiffs "manifest[ed] a subjective expectation of privacy in the premises searched"; and (2) whether society is "prepared to recognize that expectation as legitimate." *Bonds v. Cox*, 20 F.3d 697, 701 (6th Cir. 1994). Sixth Circuit jurisprudence suggests that the Flynns cannot meet the second element of this test because "ownership alone does not justify a reasonable expectation of privacy." *Shamaeizadeh*, 338 F.3d at 544. *See United States v. Salvucci*, 448 U.S. 83 (1980) ("[W]hile property ownership is clearly a factor to be considered in determining an

individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of this Court's inquiry."); *United States v. King*, 227 F.3d 732, 744 (6th Cir. 2000) (listing factors relevant to assessing whether someone has a reasonable expectation of privacy, among them possession, efforts the individual made to maintain her privacy, and a subjective expectation of privacy).

The Sixth Circuit has specifically found that "[a] landlord generally does not have a reasonable expectation of privacy with respect to property that he has rented to a tenant and that is occupied by that tenant." *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 234 (E.D.N.Y. 2010) (discussing *Johnson v. Weaver*, 248 F. App'x 694, 697 (6th Cir. 2007)). *See Rozman v. City of Columbia Heights*, 268 F.3d 588 (8th Cir. 2001) (holding that landowner lacked standing to assert his tenants' rights in seeking to challenge the searches of tenants' apartments without their permission pursuant to city ordinance requiring annual rental inspection); *Miller v. Hassinger*, 173 F. App'x 948, 952 (3d Cir. 2006) (unpublished) (finding that landlord had no privacy interest in the apartment searched where it had been leased to third parties and landlord did not have access to the apartment, did not have personal items in the apartment, and did not allege any access to the apartment); *Marcavage*, 826 F. Supp. 2d at 740 (explaining that "[c]ourts have also held . . . that a landlord does not have a reasonable expectation of privacy

with respect to individual apartments leased to third parties, simply on the basis that the landlord owns the apartments.").

And in *Shamaeizadeh v. Cunigan* the Sixth Circuit, analyzing similar facts, affirmed a district court's entry of summary judgment in favor of the defendant in a Fourth Amendment challenge to a government search of a basement apartment. 338 F.3d at 545. In that case, although the plaintiff owned the property at issue and lived in the building, he did not reside in the specific apartment that was searched. *Id.* On those facts, the Sixth Circuit found that even "[a]ssuming that Shamaeizadeh manifested a subjective expectation of privacy because he owned the basement and lived in close proximity to it, society is not prepared to recognize that expectation as legitimate" because "ownership alone does not justify a reasonable expectation of privacy." *Id. See Steinhauser v. City of St. Paul*, 595 F. Supp. 2d 987, 1006–07 (D. Minn. 2008) (holding that landlords did not have reasonable expectation of privacy in their tenants' apartments and therefore lacked standing to bring § 1983 claims based on searches of tenants' apartments), *rev'd in part on other grounds by Gallagher v. Magner*, 619 F.3d 823 (8th Cir. 2010); *Dearmore v. City of Garland*, 400 F. Supp. 2d 894, 900 (N.D. Tex. 2005) ("[T]he property owner has no expectation of privacy if the property is leased."); *United States v. Cruz*, 475 F. Supp. 2d 250, 257 (W.D.N.Y. 2007) ("Ownership of premises alone does not automatically confer standing"). *Contra Halpern*

*2012*, 2019 WL 3456885 at *3 (finding that property owner had a reasonable expectation of privacy in tenant-occupied property).

Here, it is undisputed that the Flynns have leased their Morris property to tenants for the past four or five years and the property has accordingly been "continuously occupied" by individuals other than the Flynns. ECF No. 24-3, PageID.491. Plaintiffs have otherwise failed to present evidence that would support a finding that they had a reasonable expectation of privacy in the Morris property. Summary judgment in favor of the City on the Flynns' Fourth Amendment claims is therefore warranted.

## II. Fourteenth Amendment

The Flynns allege in Count One that "[t]he Fifth and Fourteenth Amendments to the U.S. Constitution make it unconstitutional to deprive a person of their property without due process of law and just compensation." ECF No. 1, PageID.8. They elaborate that they have "a protected property interest in renting property and earning income from doing so." *Id.* Essentially, their argument is that the City's inspection ordinances coerced them and other property owners to "consent[ ] to entry and search under the threat of court action, fines, penalties, lines, and refusal to issue certificates of compliance," thereby giving up a property or liberty interest protected by the Fourteenth Amendment. ECF No. 1, PageID.9.

Although they frame Count One as "Violation of Due Process/ Unconstitutional Conditions," the Flynns include numerous factual and legal allegations within this claim, some of which appear related to alleged Fourteenth Amendment violations and others to claimed Fourth Amendment violations. To the extent the Flynns are using the Fourteenth Amendment's guarantee of substantive due process to challenge the City's ordinance on the basis that it permits or forces property owners to consent to warrantless searches, that claim fails as a matter of law. Substantive due process cannot be used to challenge government action where another constitutional amendment specifically proscribes the alleged state conduct. *See Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Cir. 2006) ("Alleged conduct that does not implicate a constitutional right protected by another amendment will be analyzed under the substantive due process component of the Fourteenth Amendment"). Put another way, a general claim of substantive due process is not available where the plaintiff can seek remedy through an "explicit textual source of constitutional protection." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Here, the Flynns' challenge to alleged warrantless searches is plainly encompassed by the Fourth Amendment. *See Lewis*, 523 U.S. at 843. Summary judgment in favor of the City is therefore warranted on Plaintiffs' Fourteenth Amendment claim to the extent it is based on an alleged violation of substantive due process.

Turning to the Flynns' allegation, contained within Count One, that the City's conduct violates the unconstitutional conditions doctrine, the Court notes that "[t]he United States Constitution does not contain an Unconstitutional Conditions Clause. What it does contain is a series of individual rights guarantees, most prominently those in the first eight provisions of the Bill of Rights and those in the Fourteenth Amendment." *Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908, 911 (6th Cir. 2019). Based on these guarantees of rights, "[t]he government may not deny an individual a benefit, even one an individual has no entitlement to, on a basis that infringes his constitutional rights." *Id.* at 911 (citing *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013)). Plaintiffs seek to apply the unconstitutional conditions theory—"a species of substantive due process"—to their case by arguing that the City does not issue certificates of compliance to rental properties unless the owner surrenders his or her right to be free from warrantless searches. *MS Rentals,* LLC, 362 F. Suppp.3d at 413.

In addition to the barrier that Plaintiffs cannot use substantive due process to challenge an ordinance they say permits warrantless searches, the Court finds nothing in the record to show that the City in fact conditions issuance of certificates of compliance on property owners' surrender of their right to be free from warrantless searches. As stated by another court in this district in a similar case, "[c]ertainly, the City requires rental properties to meet the Code's habitability standards, and

the landlord must demonstrate compliance through an initial inspection. And there is nothing wrong with that." *MS Rentals, LLC*, 362 F. Supp. 3d at 413. Plainly, the City is permitted by law to enact and enforce laws intended "to protect the public health, safety and welfare by establishing minimum standards governing the state of repair and maintenance of rental dwellings" and "to provide an efficient system for compelling both absentee and local landlords to correct violations and maintain, in proper condition, rental property within the city." ECF No. 24-4, PageID.506 (Lincoln Park Code of Ordinances § 1482.02(a)); *15192 Thirteen Mile Road, Inc. v City of Warren*, 626 F. Supp. 803, 823 (E.D. Mich. 1985) (Harvey, J.) ("[I]t is beyond all dispute that local municipalities are empowered to regulate land use in order to maintain or improve the quality of life within their communities."); *MS Rentals, LLC*, 362 F. Supp. 3d at 413 ("The underlying requirements that rental properties possess certificates of compliance and failure to do so may result in a blight violation are lawful, as is the requirement that landlords demonstrate compliance before being allowed to rent the property to tenants.").

Finally, to the extent the Flynns are attempting to assert a Fourteenth Amendment claim rooted in violation of procedural due process, that claim also fails. Plaintiffs have not presented any evidence that the City denied them any liberty or property interest. Procedural due process serves to constrain government decisions that deprive individual of a liberty or property interest within the meaning of the due

process clause of the Fifth or Fourteenth Amendment. *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976); *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017). The only property interest the Flynns identify in their Complaint is their "protected property interest in renting property and earning income from doing so." ECF No. 1, PageID.9. Yet Plaintiffs acknowledged in deposition testimony that they were never deprived of their ability to continuously rent their properties to City tenants (despite failing to meet the criteria required for issuance of a certificate of compliance). ECF No. 24-3, PageID.491. The Court will enter summary judgment in favor of the City on Count One of the Flynns' Complaint.

## III.   Remedy of Assumpsit

The Flynns also assert an assumpsit action against the City seeking restitution for "an illegal or inappropriate assessment that is authorized to become a lien on property." ECF No. 1, PageID.12–13. Assumpsit is a common-law action for breach of an express or implied promise or contract. *Fisher Sand & Gravel Co. v. Neal A. Sweebe, Inc.*, 837 N.W.2d 244, 256–57 (Mich. 2013). But Michigan law abolished assumpsit as an independent cause of action with the adoption of the General Court Rules in 1963. *Id.* at 256. Accordingly, the Court will enter summary judgment in favor of the City on this claim.

Plaintiffs' counsel is well aware that this is the state of the law because his stand-alone assumpsit claims have been dismissed in several analogous actions challenging municipal inspection ordinances. *See MS*

*Rentals, LLC*, 362 F. Supp. 3d at 411 (Lawson, J.) (dismissing assumpsit claim and admonishing that "Plaintiff's counsels' experience with other cloned cases in this Court should have taught that lesson."); *Garner Properties & Mgmt.*, 2017 WL 3412080 at *17 (Goldsmith, J.) (dismissing claim of assumpsit as an independent cause of action); *NILI 2011, LLC*, 2017 WL 5467746 at *9 (Drain, J.) ("Plaintiffs cannot assert a claim based on assumpsit."). Although substantive remedies traditionally provided under the doctrine of assumpsit might still be available if the Flynns had succeeded on their substantive claims, they cannot sustain a claim based on assumpsit alone. *See MS Rentals, LLC*, 362 F. Supp. 3d at 411 (explaining that the availability of assumpsit remedies "depends on the plaintiffs' success on the substantive counts."). Summary judgment is warranted on Plaintiffs' state-law claim for assumpsit, Count Three of the Complaint.

## IV. Unjust Enrichment

The Flynns next contend that Lincoln Park is unjustly enriching itself by implementing "a policy and practice of starting the three-year period for [c]ertificates [of compliance] from dates that do not correspond with when a property is in compliance." ECF No. 28, PageID.638. Essentially, the Flynns argue that the City has unjustly enriched itself by collecting inspection fees from Plaintiffs and other property owners under the rental registration and inspection ordinances, in addition to allegedly backdating certificates of compliance, necessitating that rental

owners pay fees for new certificates of compliance earlier than required by the text of the ordinances.

Government entities including the City are generally entitled to immunity from all state-law tort claims under Michigan's Governmental Tort Liability Act, Mich. Comp. Laws §§ 691.1401 *et seq.*, so long as the entity is engaged in the exercise or discharge of a governmental function." *Moskwa v. Gracik*, No. 277439, 2008 WL 1914798, at *3 (Mich. Ct. App. May 1, 2008) (per curiam) (citing Mich. Comp. Laws § 691.1407). Performing statutorily authorized inspections and enforcing city ordinances is a government function. *See Garner Props. & Mgmt. LLC v. City of Inkster*, No. 17-cv-13960, 2018 WL 3870056, *11 (E.D. Mich. Aug. 15, 2018) (citing *Moskwa*, 2008 WL 1914798, at *3). Plaintiffs, however, have directed the Court to the Michigan Supreme Court's recent opinion in *Wright v. Genesee County*, 934 N.W.2d 805, 812 (Mich. 2019), which held that the Governmental Tort Liability Act does not in fact bar unjust-enrichment claims against government entities where the claim is rooted in alleged "unfairness flowing from the [government's] 'benefit received'—its unfair retention of the plaintiff's money" rather than from the government's "civil wrong." The Court will therefore address the merits of the Flynns' unjust-enrichment claim.

Establishing an unjust enrichment claim under Michigan law requires demonstrating "(1) the defendant's receipt of a benefit from the plaintiff and (2) an inequity to [the] plaintiff as a result." *AFT Mich. v.*

*Michigan*, 846 N.W.2d 583, 590 (Mich. 2014) (citing *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991)). The Flynns cannot establish these elements.

Plaintiffs have not challenged the City's right or authority to collect property-inspection fees. It is well-established that municipalities have authority to regulate land use to maintain or improve quality of life within their communities. *15192 Thirteen Mile Road, Inc.*, 626 F. Supp. at 823 (citing *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926)). Accordingly, the payment of lawful inspection fees does not confer a benefit on the City. *Halpern 2012, LLC*, 404 F. Supp. 3d at 1124. There is likewise no inequity that stems from the City requiring the Flynns to pay these fees. To legally rent their properties to tenants, the Flynns must have a certificate of compliance. And to obtain a certificate of compliance, Plaintiffs must pay the inspection fee and pass an inspection to insure the safety and habitability of the dwelling. *See id.* The Court observes that the Flynns take issue only with the question of *when* rental-property owners are required to pay the inspection fees. Whether the City requires property owners pay the inspection fees at the time they apply for a certificate of compliance or on the date they pass inspection, the amount charged would be exactly the same. After the Flynns paid their initial inspection fee on or about September 24, 2014, they benefitted from being permitted to continue to rent out the property at 1542 Morris even though they did not pass inspection and receive their certificate of

compliance until November 14, 2016. *See* ECF No. 24-9, 10. That certificate of compliance carried an expiration date of September 24, 2017, three years after the date that the Flynns paid their initial inspection fee. ECF No. 24-6. These facts do not present a genuine issue as to whether the Flynns suffered any inequity under the City's rental-property ordinances. They are perhaps fortunate that the City did not require their tenants to vacate during the period when the property was unable to pass inspection. The City is entitled to summary judgment on Count Four, Plaintiffs' unjust-enrichment claim.

## V. Plaintiffs' claims for injunctive and declaratory relief are not independent causes of action.

Counts Five and Six of the Complaint assert claims for injunctive relief and declaratory relief, respectively. But injunctive and declaratory relief are remedies available only if the Flynns succeed on the merits of their claims—not stand-alone causes of action. *See MS Rentals, LLC*, 362 F. Supp. 3d at 412; *Cronin v. Bank of Am.*, No. 12-13249, 2013 WL 2626739, at *6 (E.D. Mich. June 11, 2013); *McCann v. U.S. Bank, N.A.*, 873 F. Supp. 2d 823, 848 (E.D. Mich. 2012). Summary judgment will therefore be entered in favor of the City on Counts Five and Six.

## CONCLUSION

For these reasons, Defendant City of Lincoln Park's motion for summary judgment is **GRANTED**. Summary judgment will be entered in favor of Defendant on Count One ("Violation of Due

Process/Unconstitutional Conditions Doctrine"), Count Two ("Violation of Fourth Amendment"), Count Three ("Unjust Enrichment/Remedy of Assumpsit"), Count Four ("Unjust Enrichment"), Count Five ("Injunctive Relief"), Count Six ("Declaratory Relief"), and Count Seven ("Violation of 42 U.S.C. § 1983").

**SO ORDERED.**

Dated: January 21, 2020            s/Terrence G. Berg
                                   TERRENCE G. BERG
                                   UNITED STATES DISTRICT JUDGE


**Certificate of Service**

I hereby certify that this Order was electronically submitted on January 21, 2020, using the CM/ECF system, which will send notification to all parties.

                                   s/Amanda Chubb
                                   Case Manager